# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MISSOURI
### WESTERN DISTRICT

UNITED STATES OF AMERICA,    )
        )
            Plaintiff,    )
        )
      vs.    ) Case No. 4:23-cr-00111-BP
        )
DEJOHUAN HUNTLEY,    )
        )
           Defendant,    )

## DEFENDANT DEJOHUAN HUNTLEY'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE/VARIANCE

COMES NOW the Defendant, Dejohuan Huntley, by and through counsel of record, Blade Moore, and hereby submits this Sentencing Memorandum pursuant to Rule 32 of the Federal Rules of Criminal Procedure. Sentencing in this cause is presently set for June 26, 2024, at 1:00 PM. Mr. Huntley and undersigned counsel have received and reviewed the Presentence Investigation Report ("**PSR**") (**Doc. 98**) which was filed in this case and have discussed all issues with respect to sentencing.

This Sentencing Memorandum is filed to respectfully assist the Court in determining what type and length of sentence would be sufficient, but not greater than necessary, in order to comply with the statutory directives, set forth in 18 U.S.C. §3553(a). Mr. Huntley is asking this court to depart/vary downward from the advisory Sentencing Guideline range and impose a sentence within the range of 48-60 months.

1

## I. Introduction

On February 21, 2024, Mr. Huntley appeared before the Court, and entered a plea of guilty to Counts 1, 19, and 23 of the 23-Count Indictment, charging him with Conspiracy to Traffick Firearms in violation of 18 U.S.C. §§933(a)(1), (3), and (b); Possession of an Unregistered Machinegun in violation of 26 U.S.C. §§5861(d), 5871, and 5845; and Felon in Possession of a Firearm in violation of 18 U.S.C. §§922(g)(1) and 924(a)(8).

The plea of guilty was entered pursuant to a plea agreement with the Government, the highlights of which are as follows:

    (a) The application guideline section for the offense of conviction is §2K2.1, which provides for a base offense level of at least 22.

    (b) A 2-level enhancement, pursuant to 2K2.1(b)(1), due to the offenses involving more than three firearms.

    (c) A 4-level enhancement, pursuant to §2K2.1(b)(5), for trafficking firearms.

    (d) A 3-level reduction, pursuant to §3E1.1, for acceptance of responsibility.

    (e) The Government agreed not to seek an upward departure or an upward variance from the guideline range deemed applicable by the Court, while the **defendant** may seek a downward departure or a downward variance from the guideline range deemed applicable by the Court.

**(PSR, P. 4, ¶ 2)**

The Court accepted Mr. Huntley's plea and ordered the completion of a presentence investigation and written report. The initial draft of the **PSR** was

2

received and reviewed as well as responded to. Mr. Huntley and counsel are ready to proceed with the Sentencing Hearing at the scheduled date and time.

## II.    Unresolved Issues with Respect To the PSR

Though this would have no effect on the guideline calculations, Mr. Huntley has objected to the with the inclusion of the "historical context" of the firearms associated with Mr. Huntley. (**PSR, P. 9, ¶ 29**). Mr. Huntley knows that the standard of proof applicable to relevant conduct determinations is a preponderance of the evidence. *United States v. Hogue*, 66 F.4th 756, 765 (8th Cir. 2023). While Mr. Huntley cannot and does not dispute the facts of the firearms being used in prior acts of violence determined by the Probation Office, he merely is suggesting that the factor should not be considered as a part of relevant conduct. This was not conduct of Mr. Huntley, certain conduct of others as part of "jointly undertaken criminal activity," or any other conduct, or as enumerated in U.S.S.G. §1B1.3.

## III.    Standards of Imposing Sentence

As the U.S. Supreme Court established in *Booker*, *Gall*, and *Kimbrough*, a sentencing Court has broad discretion to consider nearly every aspect of a particular case (and a particular defendant) in fashioning an appropriate sentence. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every

case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall,* 552 U.S. at 52 (citing *Koon v. United States*, 518 U.S. 81, 113 (1996)). *Booker* made the U.S. Sentencing Guidelines ("Guidelines") advisory rather than mandatory. *Booker*, 543 U.S. at 264. And in *Gall*, the Supreme Court took pains to point out that 18 U.S.C. §3553(a)(3) "directs the judge to consider sentences other than imprisonment." *Gall*, 552 U.S. at 59. The *Kimbrough* Court stressed that the sentencing judge is not bound by the Guidelines or Guidelines Policy Statements; rather, he may make his own policy judgments, even if those judgments are different than those provided for in the Guidelines. *Kimbrough*, 552 U.S. at 101. See also, *Spears v. United States*, 555 U.S. 261, 264-265 (2009).

The primary federal statutes governing sentencing in the federal district courts are 18 U.S.C. §3553(a) and 18 U.S.C. §3661. Section 3553(a) contains an introductory portion and seven subsections. The introductory portion directs the sentencing court, in determining a particular sentence, to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from future crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the Guidelines; (5)

Guidelines Policy Statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. The introductory portion of §3553(a) also directs the sentencing court to "impose a sentence sufficient but not greater than necessary" to comply with the purposes of subsection (2). Indeed, this is "the overarching goal in federal sentencing." *Freeman v. United States*, 564 U.S. 522, 131 S.Ct. 2685, 2692 (2011).

Of crucial importance, 18 U.S.C. §3661 makes it clear that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Put simply, in addition to the §3553(a) sentencing factors, the court may receive and consider any information concerning the defendant's background, character, and conduct in imposing a sentence. The Supreme Court highlighted the centrality of this concept: "In particular, we have emphasized that '[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Pepper v. United States*, 562 U.S., 131 S. Ct. 1229, 1240 (2011) (citations omitted).

**IV.    The History, Characteristics, Background, Character, and Conduct of Dejohuan Huntley Justify a Downward Variance.**

### A.    *Early Childhood and Formative Years*

Mr. Huntley experienced more trauma by the time he was 15 than most people experience in a lifetime. This is evident from growing up in a home in which he regularly witnessed drug use, alcohol abuse, and domestic violence. (**PSR, P. 20, ¶¶ 104, 106**). He was also the victim of the domestic violence himself. (**PSR, P. 20, ¶ 104**). But more horrific than that is that he was shot twice as a child – once in the face at the age of 12, a second time in the back and hip when he was 15 years old. (**PSR, P. 21, ¶ 111**). These injuries had physical effects as well as psychological effects that truly transformed the man Mr. Huntley would become.

### B.    *Medical and Mental Health Issues*

The **PSR** sets out the current status of Mr. Huntley's medical issues (**P. 21, ¶¶ 111-114**), however this does not tell the full story. Defendant's bond report was filed on May 26, 2023 (**Doc. 30**) and had some concerning information regarding his medical history and mental health, as well as his issues with substance abuse. Specifically, his gunshot wound to the face which resulted in – or exacerbated – PTSD, anxiety, and depression. There was also an admission that he had been hospitalized on several occasions for mental health concerns.

6

The Court is also likely aware that the original arraignment had to be postponed due to his hospitalization following reports of seizure activity by the jail staff. Upon review of the medical records from this incident (entered during the Detention Hearing, **Doc. 47**), it showed the possibility of a TBI stemming from that earlier shooting. More troubling, still, was the report from the jail facility to the US Marshals that Mr. Huntley was non-communicative and unable to control his bodily functions. Several attempts to coordinate an in-person or electronic meeting were stymied because of his inability to communicate. The arraignment had to be rescheduled one more time for similar health concerns – though not for any further hospitalizations.

Mr. Huntley was first diagnosed with anxiety and PTSD at age 12, and then depression at age 15. (**PSR, P. 22, ¶ 115**). Again, those diagnoses stem directly from his being a gunshot victim at a truly young age. As such, he has battled suicidal ideation throughout his life and has had many hospitalizations for depression-related incidents. *Id*. No person should have to endure such trauma, much less a child.

### C. *Substance Abuse Issues*

These experiences are what prompted Mr. Huntley's substance abuse issues. To wit, he first used marijuana at age 12 as a way to address the pain he was experiencing. (**PSR, P. 22, ¶ 120**). This led to daily use and he began to combine this with other narcotics and alcohol. Specifically, following his gunshot

7

injuries, he began to abuse prescription medication and that, too, became a daily occurrence. (**PSR, P. 22, ¶ 121**). While he has attempted prior drug treatment programs, he was ultimately unsuccessful in completing those. (**PSR, P. 22, ¶ 122**). However, Mr. Huntley and counsel truly believe that he is now enough removed from the drug use and in the right headspace to want to truly seek treatment. He understands how his addiction has controlled and ruined his life, and now his only concern is using this time to make sure it doesn't happen again. Mr. Huntley knows that addiction is a disease for which there is no cure, only treatment and maintenance. To that end, Mr. Huntley would ask to be screened for participation in the RDAP. He and counsel have discussed the benefits but also the commitment it requires. Mr. Huntley is eager to take advantage of this amazing program and hopes he can benefit from its curriculum and structure.

### D.     *Family and Support System*

Even considering his childhood experiences, Mr. Huntley has a family and support system unlike any counsel has worked with. They are caring, compassionate, and thoughtful. When counsel was first appointed, it was when Mr. Huntley was battling seizures and other complications following his arrest. They were concerned for his health and safety, obviously, but they were also relieved that within the pretrial detention, he would be able to remain free from drug use.

8

Beyond the many close family members mentioned in the **PSR**, Mr. Huntley also has a wonderful aunt, Ms. Kim Whitehead. She is a Certified Advanced Alcohol and Drug Counselor who has worked for decades in the field and 20+ years with the Jackson County Drug Court. She has written a letter which counsel is attaching to this memorandum. (**Ex. 1**). No one knows better the struggles and requirements of someone going through what Mr. Huntley is currently experiencing. She knows how to set appropriate goals and the means to achieve those. Mr. Huntley is incredibly lucky to have someone like this to aid him upon his release.

### V. Huntley's Overstated Criminal History Warrant a Downward Departure/Variance

Mr. Huntley understands that the mechanism for a downward departure based off of "inadequacy" of the criminal history category is through §4A1.3(b). The PSR notes that Mr. Huntley received four criminal history points via four, separate "one point" convictions. (**PSR, P. 14, ¶¶ 71-74**). This is undisputed and Mr. Huntley did not object to this determination. However, Mr. Huntley believes that this overstates the "seriousness" of his criminal history in that three of those convictions are municipal traffic violations that were pled on the same day and for which he received a suspended imposition of sentence following two years of probation on all three concurrently. Again, Mr. Huntley is not disputing that the calculations performed by the Probation Officer were done correctly. Rather, Mr.

9

Huntley feels that a Category III for criminal history is not a fair representation of the extent or seriousness of his prior convictions. Counsel submits that a sentence of 48-60 months as and for the offenses to which Mr. Huntley entered his plea, would be "sufficient but not greater necessary" to address those sentencing factors. Certainly, such a sentence would promote respect for the law and would amount to a just punishment. Moreover, it certainly would serve as a deterrence for anyone who might be interested enough to care about it and who might, himself, be considering similar conduct. Additionally, counsel is seeking a recommendation of the Court that the Bureau of Prisons place Mr. Huntley at either Forrest City FCC or FCI El Reno. Mr. Huntley has been made aware that the sole responsibility for the placement of federal inmates rests with the federal Bureau of Prisons, and not even this Court. Nevertheless, he is asking that the Court at least make the request.

## CONCLUSION

For the foregoing reasons, Defendant Dejohuan Huntley respectfully prays the Court to impose a sentence in this case of 48-60 months to be followed by whatever period of supervision as this Court may require.

Respectfully submitted,

/s/ Blade Moore
Blade Moore, MO 64038
4050 Broadway, Ste 212
Kansas City, MO 64111
816-223-3750
ATTORNEY FOR DEFENDANT

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the above and foregoing was electronically filed with the Court this 18th day of June, 2024.

/s/ Blade Moore
Blade Moore